UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| VUTEK, INC., | ) |
| Plaintiff, | ) Case No. 4:07-CV-1886 CDP |
| v. | ) |
| LEGGETT & PLATT, INCORPORATED and L&P PROPERTY MANAGEMENT COMPANY, | ) |
| Defendants. | ) |
| LEGGETT & PLATT, INCORPORATED and L&P PROPERTY MANAGEMENT COMPANY, | ) |
| Counterclaim-Plaintiff, | ) |
| VUTEK, INC. and ELECTRONICS FOR IMAGING, INC., | ) |
| Counterclaim-Defendants. | ) |

**VUTEK'S FIRST AMENDED COMPLAINT**

Plaintiff VUTEk Inc. ("VUTEk"), for its claims against Defendants Leggett & Platt, Incorporated and L&P Property Management Company, alleges as follows:

**Parties**

1. VUTEk is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at One Vutek Place, Meredith, NH 03253.

2. Leggett & Platt, Incorporated, is a Missouri corporation organized and existing under the laws of the State of Missouri, having a principal place of business at Number 1 Leggett Road, Carthage, Missouri 64836.

- 1 -

3.     L&P Property Management Company is a Delaware corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 4095 Firestone Blvd., South Gate, California 90280.  L&P Property Management Company is wholly owned and solely controlled by Leggett & Platt, Inc.

4.     At all relevant times to the allegations herein, Leggett & Platt, Inc. and L&P Property Management Co. have acted as each others' agents and as each others' alter egos with regard to the patent rights in question, including applying for and prosecuting these rights as well as continuing to wrongfully accuse VUTEk of infringing these rights.  Thus, the acts complained of below are properly attributed to each of these entities, which are collectively referred to herein as "L&P."

## Jurisdiction and Venue

5.     VUTEk files this action against L&P for declaratory relief under 28 U.S.C. Sections 2201-2202.  This Court has subject matter jurisdiction over this declaratory judgment action under 28 U.S.C. Sections 1332 and 1338.

6.     L&P sued VUTEk in this judicial district for alleged infringement of U.S. Patent No. 6,755,518 ("the '518 patent") (Case No. 4:05CV00788 CDP), and has thus submitted itself to the jurisdiction and venue of this Court, and has created an actual controversy with VUTEk.

7.     On information and belief, L&P regularly conducts business in this judicial district.

8.     The claims in this Declaratory Judgment action arise from and relate to L&P's activities within this judicial district, including suing VUTEk for alleged infringement of the '518 patent and continuing to threaten VUTEk even after this Court entered summary judgment against L&P.

9.     The amount in controversy exceeds $75,000, exclusive of interest and costs, is between citizens of different states, and involves issues of infringement and validity of a U.S. Patent.

10.    Venue is proper under 28 U.S.C. Sections 1391(b)(1), (b)(2) and (c).

**Factual Allegations**

11.     On April 19, 2004, L&P filed U.S. Patent Application Serial No. 10/827,097 ("the '097 application"), which issued as U.S. Patent No. 7,290,874 ("the '874 patent") on November 6, 2007.  The '097 application is a continuation of the application for the '518 patent, and both patents claim UV curable ink jet printers and methods.  The '097 application was filed with identical claims to those filed in the application for the '518 patent.  The '874 patent was attached to the original Complaint as **Exhibit 1**.  The '518 patent was attached to the original Complaint as **Exhibit 2**.

12.     On information and belief, L&P Property Management Company is the assignee of all rights, title, and interest in the '874 patent.

13.     On May 17, 2005, L&P filed suit against VUTEk alleging that VUTEk infringed the '518 patent ("the '518 patent litigation").

14.     On December 2, 2005, VUTEk and L&P participated in a mediation Ordered by this Court in the '518 litigation.  In its mediation brief, VUTEk showed that substrates deform at the temperatures reached in VUTEk's accused printers, and that VUTEk's accused printers use a vacuum table rather than cold UV to address the problem of substrate deformation.  VUTEk's mediation brief was attached to the original Complaint as **Exhibit 3**.

15.     On February 21, 2006, L&P amended claim 1 in the '097 patent application to add "deform it <u>to materially alter the predetermined distance between the substrate and the printhead</u> …" and to add "<u>applying a vacuum to the substrate to help maintain the predetermined distance between the substrate and the printhead</u>."  L&P made similar amendments to other claims in the '097 application.  L&P's February 21, 2006 Amendment was attached to the original Complaint as **Exhibit 4**.

16.     On information and belief, L&P amended the claims in its '097 application on February 21, 2006 at least in part to attempt to overcome the noninfringement arguments in VUTEk's mediation brief.

17.     On October 2, 2006, VUTEk served its Motion for Summary Judgment of Invalidity in the '518 litigation.  This Motion was ultimately granted.  In this Motion, VUTEk showed how VUTEk's U.S. Patent No. 6,547,823 ("VUTEk's '823 patent") anticipates several claims of the '518 patent and, together with VUTEk's U.S. Patent No. 6,616,355 ("VUTEk's '355 patent"), would have rendered the remainder of the asserted claims from the '518 patent obvious.  VUTEk's Memorandum in Support of its Motion for Summary Judgment was attached to the original Complaint as **Exhibit 5**.

18.     On November 6, 2006, L&P again amended the claims of its pending '097 application, this time changing each instance of "cold UV curing assembly" to "cold UV lamp," each instance of "cold UV assembly" to "cold UV lamp," and each instance of "cold UV curing head" to "cold UV lamp."  L&P's November 6, 2006 Amendment was attached to the original Complaint as **Exhibit 6**.

19.     On information and belief, L&P amended the claims in its '097 application on November 6, 2006 at least in part to attempt to distinguish VUTEk's '823 patent, which teaches using UV LEDs for curing.

20.     On May 18, 2006, the U.S. Patent and Trademark Office (USPTO) issued an Office Action rejecting the claims of the '097 patent based in part on VUTEk's '823 patent.  The May 18, 2006 Office Action was attached to the original Complaint as **Exhibit 7**.

21.     On May 25, 2006, this Court issued a Markman Order in the '518 litigation, construing the claims of the '518 patent.  The '874 patent claims includes several limitations that are the same as those construed in the Markman Order in the '518 litigation.  The Markman Order construed the claim term "cold UV" to mean "an ultraviolet light source which: (i) employs selected wavelengths to limit; or (ii) has been adapted to selectively reduce the amount of; radiation (and thus heat) that impinges upon a substrate."  The Markman Order was attached to the original Complaint as **Exhibit 8**.

22.     In its Markman Order, this Court adopted the very definition of "cold UV" that L&P proposed.

23. In response to the Office Action of May 18, 2006, in an Amendment filed on June 5, 2006, L&P argued that "The '823 patent discloses the placement of UV lamps on a printhead carriage …, but never mentions the use of cold UV lamps." L&P's June 5, 2006 Amendment was attached to the original Complaint as **Exhibit 9**.

24. In the '518 litigation, each of L&P's technical and legal experts admitted that, under this Court's Markman Order, the '823 patent discloses "cold UV" for curing. L&P's arguments in its June 5, 2006 response contradicted L&P's claim construction and the opinions of its own technical and legal experts.

25. L&P neglected to submit the Markman Order to the USPTO in the '097 application until September 21, 2006, over four months after this Court issued the Markman Order, and only *after* the Examiner dropped the rejection over the '823 patent. L&P's Information Disclosure Statement filed on September 21, 2006 was attached to the original Complaint as **Exhibit 10**.

26. Also in L&P's June 5, 2006 Amendment, L&P argued that "Rather than rendering the claimed subject matter obvious, the '823 patent teaches against 'substantially curing' UV ink using a 'cold UV' source…." *See* **Exhibit 9**.

27. On December 26, 2006, this Court issued an Order in the '518 litigation, granting VUTEk's Motion for Summary Judgment of Invalidity of the '518 patent. The Summary Judgment Order was attached to the original Complaint as **Exhibit 11**.

28. In its Summary Judgment Order, this Court found that VUTEk's '823 patent "(1) includes a cold UV curing assembly, (2) discloses substantially curing ink at the printhead, (3) inherently minimizes substrate deformation, and (4) discloses alternately energizing the curing lamps." *Id.*

29. This Court's Summary Judgment Order directly contradicted L&P's Arguments in its '097 application attempting to distinguish VUTEk's '823 patent in its May 18, 2006 Amendment. L&P failed to point this contradiction out to the Examiner of its '097 application.

30. L&P submitted the Court's Summary Judgment Order on January 9, 2007 in an Information Disclosure Statement without any explanation as to the relevance of that Order to the patentability of the claims pending in the '097 application. L&P's Information Disclosure Statement filed on January 9, 2007 was attached to the original Complaint as **Exhibit 12**.

31. On May 5, 2007, the Examiner issued a Notice of Allowance in the '097 application. The prosecution history of the '097 application does not indicate that the Examiner considered the Summary Judgment Order before issuing a Notice of Allowance. The Notice of Allowance was attached to the original Complaint as **Exhibit 13**.

32. As of June 14, 2007, there was still no indication in the prosecution history of the '097 application that the Examiner considered the Summary Judgment Order. VUTEk therefore sought L&P's written permission to file a Public Protest in the USPTO against the '097 application to explain the significance of the Summary Judgment Order and the Markman Order to the patentability of the pending claims. VUTEk's Public Protest was attached to the original Complaint as **Exhibit 14**.

33. On June 21, 2007, L&P denied VUTEk's request for permission to file its Public Protest in the USPTO against the '097 application, stating that "VUTEk could have, and should have, asked for permission to file a protest much earlier if it thought L&P had failed to properly inform the Examiner of the District Court proceedings." L&P's correspondence denying VUTEk's request to file its Public Protest was attached to its original Complaint as **Exhibit 15**.

34. On May 17, 2007, Mark Smith from L&P telephoned James Etheridge of EFI, VUTEk's parent company, to inform him that the claims in the '097 application had been allowed, and requested a meeting to discuss a resolution.

35. [REDACTED]



### Count I – Non-Infringement of the '874 Patent

36. VUTEk incorporates here its averments in paragraphs 1 through 35 above.

37. VUTEk does not directly infringe and has not directly infringed, does not induce and has not induced infringement of, and does not contribute to and has not contributed to the infringement of any valid and enforceable claim of L&P's '874 patent under any theory, including literal infringement or infringement under the doctrine of equivalents.

38. No claim of the '874 patent can be validly construed to cover any product made, used, sold, offered for sale, or imported by VUTEk.

39. Based on L&P's actions, including accusations of patent infringement of the '518 patent, filing suit for infringement of the '518 patent, L&P's prosecution of the '097 application responsive to events from the '518 litigation, settlement discussions regarding alleged infringement of the '097 application, and the termination of these settlement discussions, there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

40. L&P's actions have created an actual, justiciable controversy between the parties regarding VUTEk's manufacture and sales of its UV curable ink jet printers and L&P's claims of patent infringement.

41. VUTEk requests a declaratory judgment that none of its products infringes any claim of the '874 patent.

### Count II – Invalidity of the '874 Patent

42. VUTEk incorporates here its averments in paragraphs 1 through 35 above.

43. Each claim of the '874 patent is invalid for failure to comply with one or more provisions of Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and 112.

44. VUTEk requests a declaratory judgment that each claim in the '874 patent is invalid.

### Count III – Noninfringement of the '602 Patent

45. VUTEk incorporates here its averments in paragraphs 1 through 35 above.

46. VUTEk does not infringe, has not infringed, does not and has not induced infringement, and does not and has not contributed to infringement of the '602 patent under any theory, including literal infringement or infringement under the doctrine of equivalents.

47. No claim of the '602 patent can be validly construed to cover any product made, used, sold, offered for sale, or imported by VUTEk.

48. VUTEk requests a declaration that none of its products infringes any claim of the '602 patent.

### Count IV – Invalidity of the '602 Patent

49. VUTEk incorporates here its averments in paragraphs 1 through 35 above.

50. Each claim of the '602 patent is invalid for failure to comply with one or more provisions of Title 35 of the United States Code, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and 112.

51. VUTEk requests a declaration that each claim in the '602 patent is invalid.

### Count V – Inequitable Conduct in the '097 Patent Application

52. VUTEk incorporates here its averments in paragraphs 1 through 35 above.

53. The '874 patent is unenforceable for inequitable conduct L&P committed before the United States Patent and Trademark Office ("USPTO") during the prosecution of the '097 application that issued as the '874 patent.

54. L&P committed acts and omissions and exercised a pattern or practice of conduct during the prosecution of the '097 application in the USPTO, which violated the duty of candor owed by patent applications, with the intent to deceive the USPTO and its agents into issuing patent claims of a scope beyond any to which L&P was entitled.  This conduct included intentionally withholding material information from the USPTO and making false and misleading statements.

55. VUTEk requests a declaratory judgment that the '874 patent is unenforceable.

56. L&P's acts, omissions, pattern or practice of misconduct included, for example, (1) its arguments attempting to distinguish VUTEk's '823 patent and other prior art in which L&P took positions on the meaning of the claim term "cold UV" that contradicted positions it took in the '518 patent litigation, contradicted testimony its experts provided in the '518 patent litigation, and contradicted this Court's Markman Order from the '518 patent litigation, (2) its arguments attempting to distinguish VUTEk's '823 patent and other prior art in which L&P took positions on the teachings of VUTEk's '823 patent that directly contradicted the findings of this Court in the '518 patent litigation, and (3) L&P's refusal to correct its acts, omissions, and pattern or practice of misconduct before the USPTO even after VUTEk pointed out L&P's misconduct to L&P.

**Materiality of L&P's Arguments Regarding the Teaching of "Cold UV" in VUTEk's '823 Patent and This Court's Markman Order**

57. L&P's arguments regarding VUTEk's '823 patent in its June 5, 2006 Amendment included the following statement: "The '823 patent discloses the placement of UV lamps on a printhead carriage …, but never mentions the use of cold UV lamps."

58. This Court's Markman Order from the '518 patent litigation issued before L&P made these arguments to the USPTO regarding VUTEk's teaching of "cold UV."

59. This Court adopted L&P's definition of "cold UV."

60. L&P's own expert witnesses admitted that under this Court's (and L&P's) construction of "cold UV," the UV LEDs taught in VUTEk's '823 patent were, in fact, "cold UV."

61. The fact that this Court and L&P defined "cold UV" in such a way as to include the UV LEDs taught in VUTEk's '823 patent was material to the examination of the '097 application because the Examiner would have realized that L&P's arguments distinguishing VUTEk's '823 patent on the basis of allegedly teaching away from "cold UV" were disingenuous and false.

**Materiality of L&P's Arguments Regarding "Substantially Curing" and "Cold UV" in VUTEk's '823 Patent and This Court's Summary Judgment Order**

62. L&P's arguments regarding VUTEk's '823 patent in its June 5, 2006 Amendment also included the following statement: "Rather than rendering the claimed subject matter obvious, the '823 patent teaches against 'substantially curing' UV ink using a 'cold UV' source…."

63. This Court's Summary Judgment Order from the '518 patent litigation issued after L&P made its arguments regarding the alleged lack of teaching "substantially curing" using "cold UV" in VUTEk's '823 patent.

64. This Court's Summary Judgment Order found that VUTEk's '823 patent: "(1) includes a cold UV curing assembly, (2) discloses substantially curing ink at the printhead, (3) inherently minimizes substrate deformation, and (4) discloses alternately energizing the curing lamps."

65. This Court's findings in its Summary Judgment Order directly contradicts the statements L&P made to distinguish VUTEk's '823 patent. This Court's holdings in its Summary Judgment Order were thus highly material to the patentability of the '874 patent.

**L&P's Intent to Deceive the USPTO**

66. Upon information and belief, prosecution counsel for L&P on the '097 patent was kept closely apprised of the events and Orders from the '518 patent litigation.

67. Upon information and belief, prosecution counsel for L&P was aware of the Markman Order and L&P's definition of "cold UV" in the '518 patent litigation before it submitted its arguments regarding the teachings of VUTEk's '823 patent on June 5, 2006.

68. L&P neglected to submit the Markman Order to the USPTO in the '097 application until September 21, 2006, over four months after this Court issued the Markman Order, and after the Examiner dropped the rejection over the '823 patent.

69. Upon information and belief, L&P deliberately waited until after the Examiner withdrew the rejection over VUTEk's '823 patent to submit the Markman Order to the USPTO because the Markman Order contradicted L&P's claim construction in its prosecution of the '097 application.

70. L&P neglected to explain to the USPTO that the Summary Judgment Order held that the '518 patent was invalid in view of VUTEk's '823 patent, and that the findings in the Summary Judgment Order directly contradicted L&P's arguments in its June 5, 2006 amendment.

71. L&P refused to correct the prosecution record of the '097 application, and refused to allow VUTEk to notify the Examiner of L&P's omissions, even after VUTEk expressly pointed these omissions out to L&P.

72. At the time that VUTEk requested permission to file a Public Protest and thus correct the record of the '097 application, the prosecution history did not indicate that the Examiner had considered this Court's Summary Judgment Order from the '518 patent litigation.

73. L&P's stated reason for refusing to allow VUTEk to correct the prosecution record of the '097 application was that "VUTEk could have, and should have, asked for permission to file a protest much earlier if it thought L&P had failed to properly inform the Examiner of the District Court proceedings." Under 37 C.F.R. § 1.56, "The duty to disclose information exists with respect to each pending claim until the claim is cancelled or withdrawn

- 12 -

from consideration, or the application becomes abandoned." The claims of the '097 patent application had not been cancelled or withdrawn from consideration, and the '097 patent application had not yet issued or become abandoned at the time VUTEk requested permission to file its public protest.

74. L&P's refusal to correct the record of the '097 application, and L&P's refusal to allow VUTEk to correct the record of the '097 application, demonstrates L&P's intent to deceive the USPTO.

**Unenforceability**

75. L&P was aware of both the significance and relevance of the Markman Order and Summary Judgment Order in the '518 patent litigation. L&P's arguments to the USPTO contradicting the express holdings and findings of this Court's Orders constitute inequitable conduct.

76. The '874 patent is rendered unenforceable due to L&P's inequitable conduct in prosecuting the '097 application.

**PRAYER FOR RELIEF**

WHEREFORE, VUTEk respectfully prays that the Court grant the following relief:

(i) Enter a Declaration that VUTEk does not infringe, has not infringed, does not and has not induced infringement, and does not and has not contributed to infringement of the '874 patent under any theory, including literal infringement or infringement under the doctrine of equivalents;

(ii) Enter a Declaration that the '874 patent is invalid;

(iii) Enter a Declaration that VUTEk does not infringe, has not infringed, does not and has not induced infringement, and does not and has not contributed to infringement of the '602 patent under any theory, including literal infringement or infringement under the doctrine of equivalents;

(iv) Enter a Declaration that the '602 patent is invalid;

(v) Enter a Declaration that all claims of the '874 patent are unenforceable as a result of L&P's inequitable conduct in the prosecution of the '097 application;

(vi) Find that this is an exceptional case under 35 U.S.C. §285;

(vii) Award VUTEk its attorney fees and costs incurred in this litigation;

(viii) Enter an injunction enjoining L&P, and its officers, directors, employees, affiliates and agents, from further asserting the '874 patent against VUTEk's UV curable ink jet printers;

- 14 -

    (ix)    Grant VUTEk such other and further relief as the Court deems equitable and just in the circumstances.

Dated:  May 8, 2009

Respectfully submitted,

By:  /s/ Michael J. Stimson
W. David Wells
Thompson Coburn LLP
One U.S. Bank Plaza
505 N. 7th Street
St. Louis, Missouri 63101-1693
Telephone: (314) 552-6118
Facsimile: (314) 552-7118

William C. Rooklidge
Russell B. Hill
Michael J. Stimson
Alyson G. Barker
HOWREY LLP
2020 Main Street, Suite 1000
Irvine, CA 92614-8200
Telephone:  (949) 759-3961
Facsimile: (949) 266-5887

**CERTIFICATE OF SERVICE**

    I hereby certify that on May 8, 2009, the foregoing VUTEk's First Amended Complaint was served electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following:

> David A. Roodman
> James B. Surber
> Robert Lancaster
> Bryan Cave LLP
> One Metropolitan Square
> 211 North Broadway, Suite 3600
> St. Louis, MO 63102-2750
> Telephone: (314) 259-2000
> Facsimile: (314) 259-2020

                      By:    /s/ Michael J. Stimson